**DAYS INNS WORLDWIDE, INC., Plaintiff,**

v.

**LINCOLN PARK HOTELS, INC., et al., Defendants.**

No. 06 C 2960.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 22, 2007.

Opinion on Reconsideration May 16, 2007.

Paula J. Morency, Fiona A. Burke, Schiff Hardin LLP, Chicago, IL, for Plaintiff.

Stephen A. Cohen, Marks, Marks & Kaplan, Chicago, IL, Adrian Mendoza, Jr., James Michael Joyce, Lillig & Thorsness, Ltd., Oak Brook, IL, for Defendants.

## MEMORANDUM OPINION

DER–YEGHIAYAN, District Judge.

This matter is before the court on Plaintiff Days Inns Worldwide, Inc.'s ("DIW") motion for summary judgment and on Defendant Lincoln Park Hotels, Inc.'s ("LPH") and Defendant Richard Erlich's ("Erlich") motion for summary judgment on Counts Thirteen and Fifteen. For the reasons stated below, we grant DIW's motion for summary judgment on all counts except for Count Eight, which is denied as moot. We also deny LPH's and Erlich's motion for summary judgment in its entirety.

## BACKGROUND

DIW alleges that it owns a proprietary interest in certain marks ("Days Inn Marks") and that on December 27, 1994, it entered into a licensing agreement ("Agreement") with LPH under which LPH was authorized to operate a hotel ("Hotel") using the Days Inn Marks. As part of the deal, Erlich, the sole shareholder of LPH, also allegedly entered into an agreement with DIW under which he agreed to be the contractual guarantor of LPH's obligations ("Guaranty Agreement"). (Erlich Dep. 25).

According to DIW, LPH failed to honor its obligations under the Agreement to obtain a certain amount of insurance and to name DIW as an additional insured. DIW contends that Erlich purposely failed to obtain proper insurance because he was planning to sell the Hotel. Erlich also allegedly furnished DIW with a falsified certificate of insurance. In June 2004, a guest at the Hotel was seriously injured when she fell down a laundry chute at the Hotel and the guest brought a tort action against LPH and DIW ("Guest Action"). DIW contends that under the terms of the Agreement LPH was also obligated to in-

demnify and defend DIW in the Guest Action and that LPH has done neither.

In late 2005 LPH sold the Hotel to Defendant Gold Coast Investors ("GCI") without obtaining DIW's consent. DIW contends that the sale violated several provisions of the Agreement and DIW claims that it terminated the Agreement upon learning of the sale. Despite the termination of the Agreement, GCI continued to operate the Hotel using the Days Inn Marks. DIW also alleges that LPH has failed to make certain payments required under the Agreement.

DIW brought the instant action and includes in the complaint trademark infringement claims alleging violations of 15 U.S.C. § 1114(1)(a) and 15 U.S.C. § 1125(a) (Counts One and Two), a trademark dilution claim based upon a violation of 15 U.S.C. § 1125(c), (Count Three), an Illinois Deceptive Trade Practices Act ("IDTPA"), 815 ILCS 510/1 et seq., claim (Count Four), an Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1 et seq., claim (Count Five), a common law unfair competition claim (Count Six), an accounting claim (Count Seven), an unjust enrichment claim (Count Eight), a breach of contract claim based upon a breach of the post-termination obligations (Count Nine), a breach of contract claim based upon a breach of the obligation to pay recurring fees (Count Ten), a breach of contract claim for liquidated damages (Count Eleven), an alternative breach of contract claim for expectancy damages (Count Twelve), a breach of contract claim based upon a breach of the obligations to indemnify and defend DIW (Count Thirteen), a breach of contract claim based upon a breach of the insurance obligations (Count Fourteen), and a breach of guaranty claim against Erlich (Count Fifteen). The prior judge in this case entered an agreed injunction order prohibiting GCI from using the Days Inn Marks. DIW now moves for summary judgment on all Counts and LPH and Erlich move for summary judgment on the indemnification claims in Count Thirteen and in Count Fifteen.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986); *Insolia v. Philip Morris, Inc.,* 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Bay v. Cassens Transport Co.,* 212 F.3d 969, 972 (7th Cir.2000).

## DISCUSSION

### I. Trademark Claims and Related State Law Claims (Counts One Through Six)

DIW argues that it is entitled to summary judgment on the trademark infringement claims, IDTPA claims, Consumer Fraud Act claims, and common law unfair competition claims. Defendants do not challenge the sufficiency of evidence on any of the elements of the above listed claims. Neither do any of the Defendants offer any arguments to support a denial of summary judgment on the trademark claims and related state law claims brought against LPH, Erlich, and GCI. The only argument offered by Defendants in defense of the claims is that LPH and Erlich should be excused from liability because after they sold the Hotel to GCI, they lost control over the Days Inn Marks that were misused by GCI. Thus, Defendants' only argument attempts to shift all blame from LPH and Erlich to GCI.

### A. Infringement Claims and Related State Law Claims

■ DIW includes in its complaint trademark infringement claims based upon violations of 15 U.S.C. § 1114(a)(1) (Count One) and 15 U.S.C. § 1125(a) (Count Two). The IDTPA claims (Count Four), Consumer Fraud Act claims (Count Five), and common law unfair competition claims (Count Six) are evaluated under the same analysis as the trademark infringement claims. *Trans Union LLC v. Credit Research, Inc.,* 142 F.Supp.2d 1029, 1038 (N.D.Ill.2001) (stating that unfair competition claims brought under Illinois law and IDTPA claims are reviewed under the same analysis that is employed for a Lanham Act trademark infringement claim); *D 56, Inc. v. Berry's Inc.,* 955 F.Supp. 908, 920 (N.D.Ill.1997) (stating that "[u]nder Illinois law, claims under the ICFDBPA and the IDTPA are to be resolved according to principles set forth under the Lanham Act"). For a trademark infringement claim, a plaintiff is required to establish that: (1) "his mark is entitled to protection," and (2) "there is a likelihood of confusion between [the plaintiff's] mark and [the defendant's] mark." *Sullivan v. CBS Corp.,* 385 F.3d 772, 775–76 (7th Cir. 2004).

In the instant action, DIW has referred to evidence showing that the Days Inn Marks are entitled to protection. Defendants have also admitted this point, pursuant to Local Rule 56.1, and have not contested this point in the answer to DIW's motion for summary judgment. (LPH R DIW SF Par. 10–16); (GCI R DIW SF Par. 10–16). In regards to the likelihood of confusion determination, a court should consider factors such as: "(1) the similarity of the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiff." *Sullivan,* 385 F.3d at 776. In the instant action, Defendants have not contested DIW's position that there is sufficient evidence to show a likelihood of confusion. Defendants have also made various admissions, pursuant to Local Rule 56.1, that show that there is a likelihood of confusion.

DIW asserts in Paragraph 38 of its statement of material facts ("Paragraph 38") that, among other things, GCI did not have authorization to use the Days Inn Marks and that GCI used the Days Inn Marks in the operation of the Hotel after the sale of the Hotel by LPH to GCI. (GCI R DIW SF Par. 38). GCI failed to file any response to Paragraph 38, and thus, pursuant to Local Rule 56.1, the facts contained therein are deemed to be undisputed. LPH and Erlich also failed to dispute the facts contained in Paragraph 38. (LPH R DIW SF Par. 38). Defendants acknowledge that not only were the marks being used by GCI similar to the Days Inn Marks, the marks were the same that LPH was licensed to use. (GCI R DIW SF Par. 38); (LPH R DIW SF Par. 38). Defendants also acknowledge that GCI used the marks in operating the Hotel and thus used the marks in the same manner as DIW's franchises used the marks. (GCI R DIW SF Par. 13, 38); (LPH R DIW SF Par. 13, 38). Defendants have also acknowledged that DIW's mark is a strong mark. (LPH R DIW SF Par. 10–16); (GCI R DIW SF Par. 10–16). Finally, Defendants admit that GCI used the Days Inns Marks without the authorization of DIW. (GCI R DIW SF Par. 38); (LPH R DIW SF Par. 38). Thus, no reasonable trier of fact could conclude other than that there was a likelihood of confusion. DIW has pointed to sufficient evidence to find in its favor as a matter of law on the infringement claims and related state law claims in Counts One, Two, Four, Five, and Six, and Defendants have failed to point to any evidence to support a ruling in their favor on those claims.

## B. Trademark Dilution Claim

■ DIW includes in its complaint trademark dilution claims based upon violations of 15 U.S.C. § 1125(c) (Count Three). To prevail on a trademark dilution claim a plaintiff must establish: "(1) that the mark is famous; (2) that [the defendant] adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 811 (7th Cir.2002) (stating that "dilution differs from trademark infringement; it does not require a showing of consumer confusion as to source"). In the instant action, Defendants do not dispute that the Days Inn Marks are well established, widely recognized, and would be considered famous marks. (GCI R DIW SF Par. 10–16); (LPH R DIW SF Par. 10–16). Defendants also admit that GCI used the Days Inn Marks without authorization after the marks became famous. (GCI R DIW SF Par. 10–16, 38); (LPH R DIW SF Par. 10–16, 38). Neither do Defendants dispute that GCI diluted the Days Inn Marks or that GCI's use of the marks was commercial and in commerce. No reasonable trier of fact could find in Defendants' favor on the dilution claims. Thus, DIW has pointed to sufficient evidence to find in its favor as a matter of law on the trademark dilution claims in Count Three, and Defendants have failed to point to any evidence to support a ruling in their favor on those claims.

## C. Relinquishment of Control Argument

■ Defendants argue that LPH and Erlich cannot be liable for unauthorized use of the Days Inn Marks because when DIW terminated the Agreement, LPH and Erlich relinquished their control over the Hotel to GCI. DIW responds by arguing that LPH and Erlich are liable for contributory infringement. A party can be "held responsible for their infringing activities" if the party "intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows

or has reason to know is engaging in trademark infringement...." *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 854, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). A party can be held liable for contributory infringement if the party had "[w]illful blindness" to the trademark infringement, which is determined by assessing "what a reasonably prudent person would understand...." *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.,* 955 F.2d 1143, 1148–49 (7th Cir.1992) (stating "it does not impose any duty to seek out and prevent violations").

### 1. Contributory Liability for Actions and Inaction at Time of Sale

■ Although LPH and Erlich did not have an opportunity after the sale of the Hotel to stop the continued infringement as the defendant in *Hard Rock Cafe* did, *id.,* LPH and Erlich could still be found liable for contributory infringement based upon their conduct and inaction at the time of the sale. The facts in this case clearly show that LPH and Erlich entered into the sale with their eyes open as to GCI's intentions and yet took no action to prevent GCI from infringing upon DIW's registered marks. Defendants make no effort to contradict DIW's contention that Defendants entered into the sale aware that the ultimate outcome of the sale was that GCI, as the owner and operator of the Hotel, would be using the Days Inn Marks.

DIW states in Paragraph 37 ("Paragraph 37") of its statement of material facts that "[a]t the time that LPH sold the [Hotel] to GCI, LPH and Erlich 'definitely' knew that GCI intended to leave the Days Inn Marks up at the [Hotel] for 'a while,' and to continue operating the [Hotel] as a Days Inn hotel for as long as 'a year.'" (DIW SF Par. 37). DIW also states in Paragraph 37 that "LPH and Erlich neither removed the Days Inn Marks themselves before selling the [Hotel], as the contract required, nor mandated that GCI remove them." (DIW SF Par. 37). GCI does not respond at all to Paragraph 37. (GCI R DIW SF Par. 37). LPH and Erlich respond to Paragraph 37 by stating: "LPH and Erlich admit the requirements of the Licence Agreement." (LPH R DIW SF Par. 37).

LPH's and Erlich's response to Paragraph 37 is improper under Local Rule 56.1 because it is not followed by a citation to evidence to support the response. L.R. 56.1; *Dent v. Bestfoods,* 2003 WL 22025008, at *1 n. 1 (N.D.Ill.2003). In addition, the response is improper because it avoids responding to any other facts in the paragraph other than the one fact indicating that LPH and Erlich were required to remove the marks under the terms of the Agreement. *See also Jankovich v. Exelon Corp.,* 2003 WL 260714, at *5 (N.D.Ill.2003) (indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1). Thus, the facts contained in Paragraph 37 are deemed to be undisputed pursuant to Local Rule 56.1. LPH and Erlich admit that they knew that they were handing over the Hotel with all of its Days Inn Marks to GCI, a party that intended to use the marks without authorization in the continued operation of the Hotel. Such admitted facts regarding LPH's and Erlich's knowledge of GCI's intentions far surpass the "[w]illful blindness" standard mentioned in *Hard Rock Cafe,* 955 F.2d at 1148. Erlich also admitted at his deposition that he knew that GCI intended to "leave the signs up and stay operating as a Days Inn." (Erlich Dep. 69). Thus, based upon the undisputed facts, LPH and Erlich knowingly presented GCI with a pre-packaged, ready-made infringement opportunity and received compensation pursuant to the purchase agreement for providing that oppor-

tunity to GCI. (DIW SF Purch. Ag. Ex. 6).

### 2. Negotiations For Lawful Transfer of Franchise

Erlich stated during his deposition that he had discussed lawfully transferring the franchise to GCI, but Erlich admitted that it never progressed to the point that he contacted DIW or obtained authority from DIW to transfer the franchise. (Erlich Dep. 49–51, 53). Erlich also indicated that he thought GCI had discussed transferring the franchise with DIW, but nothing came from the negotiations, and Erlich never saw any writings indicating that DIW authorized a transfer of the franchise to GCI. (Erlich Dep. 53, 69–70). Defendants admit pursuant to Local Rule 56.1 that GCI lacked authorization from DIW to use the Days Inn Marks and Defendants have failed to present any evidence which would enable a reasonable trier of fact to conclude that GCI had obtained such authorization. (GCI R DIW SF Par. 38); (LPH R DIW SF Par. 38).

### 3. Supreme Court and Seventh Circuit Contributory Infringement Precedent

The Seventh Circuit has addressed the issue of contributory infringement in *Hard Rock Cafe*, 955 F.2d at 1148. Although, certain general principles regarding contributory infringement expressed in *Hard Rock Cafe* are applicable to the instant action, the facts in that case are somewhat distinguishable from the instant action. In *Hard Rock Cafe*, one of the defendants was an operator of a flea market that allowed a vendor to sell merchandise bearing the plaintiff's trademarks. *Id.* at 1145. The district court concluded at the conclusion of a bench trial that the flea market operator was liable for contributory infringement. *Id.* at 1145–49. The Seventh Circuit reversed the district court and remanded the case, finding that there was not sufficient evidence regarding the state of mind and knowledge of the flea market operator. *Id.* at 1149.

In remanding the case, the Seventh Circuit focused on whether the flea market operator knowingly allowed the vendor to infringe while the vendor was selling products on the property, which was under the control of the flea market operator. *Id.* The Seventh Circuit analyzed whether there was sufficient evidence that indicated that the flea market operator knew of the infringement and failed to take action to stop the infringement on its property. *Id.* The instant action is thus distinguishable from *Hard Rock Cafe* in that LPH did not allow GCI to use the Hotel property pursuant to some lease or license. LPH did not retain a legal right to control the usage of the property. Instead, LPH sold the Hotel to GCI and permanently relinquished all of its control over the Hotel property, and, in doing so, LPH lost any legal recourse against GCI to prevent further infringement. LPH also lacked any legal right to assert the proprietary rights of DIW in its marks. Once the Hotel was sold, only DIW possessed a legal recourse. Thus, the Seventh Circuit's analysis in *Hard Rock Cafe* concerning a contributing infringer's failure to halt ongoing infringement by a primary infringer is not applicable in the instant action.

Although the facts in *Hard Rock Cafe* differ from those in the instant action, the Seventh Circuit, in applying the concept of contributory infringement, looked to *Inwood Labs., Inc.*, 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606, which does have facts that are analogous to the facts in the instant action. 955 F.2d at 1148. In *Inwood*, the Court addressed whether a defendant manufacturer of a generic drug could be liable for contributory infringement. *Id.* at 852–55, 102 S.Ct. 2182. In that case, the defendant manufacturer had

made a generic drug and copied the appearance of the plaintiff competitor's pills. *Id.* at 847, 102 S.Ct. 2182. Pharmacists that received the defendant manufacturer's pills were mislabeling the containers with the registered trademark of the plaintiff competitor. *Id.* at 850, 102 S.Ct. 2182. The Court recognized that the defendant manufacturer could be liable under the concept of contributory infringement, stating that "liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another" and that "[e]ven if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances." *Id.* at 853–54, 102 S.Ct. 2182. The Court stated that "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit." *Id.* at 854, 102 S.Ct. 2182.

The application of the concept of contributory infringement by the Court in *Inwood* to the facts before it is instructive in applying the concept of contributory infringement to the facts before us. In *Inwood*, the Court stated that liability can reach beyond those that actually mislabeled the pill containers, and similarly in the instant action, liability for infringement can reach beyond GCI, which actually operated the Hotel with the Days Inn Marks after the Agreement was terminated. Also, in *Inwood*, the defendant manufacturer lost control over its pills when they were sold to pharmacists, and thus the defendant manufacturer did not have control over the pharmacists when they placed the pills in their own mislabeled containers. *Id.* at 848–49, 102 S.Ct. 2182. Likewise, LPH and Erlich lost control over the

Hotel and its displayed Days Inn Marks when the Hotel was sold to GCI. In *Inwood*, the Court indicated that the defendant manufacturer's relinquishment of direct control over the offending product did not excuse the defendant from infringement liability, and likewise, the mere fact that LPH and Erlich may have relinquished control over the Hotel does not excuse them from liability.

In addition, in *Inwood*, the defendant manufacturer supplied the pills to the pharmacists for compensation, and the Court indicated that a key inquiry was whether the manufacturer "continued to supply [the pills] to pharmacists whom the [manufacturer] knew were mislabeling generic drugs." *Id.* at 855, 102 S.Ct. 2182. Similarly, in the instant action, which involves a single transaction rather than a series of sales as in *Inwood*, LPH and Erlich supplied GCI with the Hotel and its Days Inn Marks for compensation. Thus, as in *Inwood*, LPH and Erlich can be liable for contributory infringement if they supplied the Hotel and Days Inn Marks to GCI and knew that GCI was going to use the Hotel and Days Inn Marks to infringe upon DIW's trademarks. As indicated above, based upon Defendants' admissions made pursuant to Local Rule 56.1, LPH and Erlich clearly possessed such knowledge.

Our application of the concept of contributory liability is consistent with the Seventh Circuit's warning that defendants cannot avoid liability by closing their eyes to infringement by parties that they deal with and by making themselves "willfully blind" to such infringement. *Hard Rock Cafe*, 955 F.2d at 1148 We also note that our application of the concept of contributory infringement is consistent with the Ninth Circuit's position in *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir.1996), which is cited by DIW, and

which summarized the concept as "impos[ing] liability where one person knowingly contributes to the infringing conduct of another." *Id.* at 264. In the instant action, based upon the undisputed facts, LPH and Erlich unquestionably knowingly contributed to GCI's infringement of the Days Inn Marks. Therefore, based on the above, no reasonable trier of fact could conclude other than that LPH and Erlich are liable for contributory infringement and we grant DIW's motion for summary judgment on the trademark claims and related state law claims. (Counts One through Six).

## II. Breach of Contract Claims (Counts Nine, Ten, Thirteen, Fourteen, and Fifteen)

DIW moves for summary judgment on the breach of contract claims. We note at the outset that neither LPH nor Erlich have contested that they breached certain obligations under the Agreement. Erlich, the sole shareholder of LPH and the guarantor of LPH, admitted during his deposition that he owed DIW liquidated damages for the breaches of LPH's obligations under the Agreement in the amount of $193,000.00. (Erlich Dep. 47–49). Defendants also admit such liability pursuant to Local Rule 56.1. (GCI R DIW SF Par. 32); (LPH R DIW SF Par. 32). Erlich also admitted during his deposition that when he sold the Hotel, he anticipated being held liable by DIW for breaching the Agreement and included terms in the purchase agreement with GCI that required GCI to help pay for the liquidated damages. (Erlich Dep. 58–59).

### A. Breach of Transfer Provision in Agreement and Termination of Agreement

■ Defendants admit, pursuant to Local Rule 56.1, that under Section 17(a) of the Agreement, LPH was barred from transferring or conveying its interest in the Hotel to a third party without prior written consent of DIW. (GCI R DIW SF Par. 21–23); (LPH R DIW SF Par. 21–23). Defendants also admit that LPH sold the Hotel to GCI without DIW's consent. (GCI R DIW SF Par. 25–26); (R LPH DIW SF Par. 25–26). Erlich admitted at his deposition that he never even gave DIW notice of the sale. (Erlich Dep. 59, 66). Defendants acknowledge that DIW had the right to terminate the Agreement for reasons including a breach of Section 17(a) of the Agreement, that DIW informed LPH and Erlich that the Agreement was terminated by a letter dated February 10, 2006, and that LPH and Erlich understood at that time that the Agreement had been terminated. (GCI R DIW SF Par. 21, 27, 32); (LPH R DIW SF Par. 21, 27, 32). Defendants offer no legal justification for their admitted blatant disregard for Section 17(a) of the Agreement. Thus, the undisputed evidence shows that LPH breached the Agreement by selling the Hotel to GCI and DIW properly terminated the Agreement in February 2006.

### B. Breach of Post–Termination Obligations (Count Nine)

DIW argues that it is entitled to summary judgment on the breach of contract claim based upon the breach of LPH's post-termination obligations under the Agreement. Defendants admit, pursuant to Local Rule 56.1, that under Section 21(a) of the Agreement, when the Agreement was terminated, LPH was obligated "to discontinue immediately any further use of the Days Inn Marks, and to de-identify the [Hotel] by removing all items bearing the Days Inn Marks." (GCI R DIW SF Par. 36); (LPH R DIW SF Par. 36). Defendants admit that LPH and Erlich failed to honor either obligation and admit that GCI did not remove the last of the signs bearing the Days Inn Marks

until the agreed injunction order was entered in this case. (GCI R DIW SF Par. 36, 39); (LPH R DIW SF Par. 36, 39). We note that GCI mentioned in its response to DIW's motion for summary judgment that GCI denies that it kept the Days Inn Marks up until June 2006, but GCI provides no citation to support the denial and therefore, the facts presented by DIW are deemed to be undisputed. *Dent*, 2003 WL 22025008, at *1 n. 1. Therefore, based upon the undisputed evidence, no reasonable trier of fact could conclude other than that LPH breached its post-termination obligations in Section 21(a) of the Agreement, and we grant DIW's motion for summary judgment on the breach of contract claims based upon those breaches of obligations (Count Nine).

### C. Breach of Obligation to Pay Recurring Fees (Count Ten)

DIW argues that it is entitled to summary judgment on the breach of contract claim that is based upon the failure of LPH to pay recurring fees. Defendants admit, pursuant to Local Rule 56.1, that under Sections 8 and 29(a) of the Agreement, LPH was required to remit recurring fees to DIW. (GCI R DIW SF Par. 31); (LPH R DIW SF Par. 31). Defendants have not contested DIW's assertion that LPH failed to pay all of the required recurring fees due under the Agreement. Therefore, we grant DIW's motion for summary judgment on the breach of contract claim based upon the breach of the obligation to pay recurring fees (Count Ten).

### D. Breach of Indemnification and Defense Obligations (Count Thirteen)

DIW seeks summary judgment on the indemnification and duty to defend claims and Defendants have moved for summary judgment on those claims as well. Defendants acknowledge that Section 13(d)(1) of the Agreement provided that LPH was obligated to "indemnify" and "defend" DIW in regards to any "suit ... relating to or arising out of any transaction, occurrence or service at or in conjunction with the operation of the" Hotel. (GCI R DIW SF Par. 43); (LPH R DIW SF Par. 43). Defendants also acknowledge that the Guest Action is based upon allegations relating to an occurrence that occurred in operating the Hotel. (GCI R DIW SF Par. 49); (LPH R DIW SF Par. 49).

### 1. Indemnification Claims

■ Defendants argue that DIW is precluded from pursuing the indemnification claims in this action because the Guest Action is still pending in state court. Defendants cite *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 301 Ill.App.3d 349, 234 Ill.Dec. 612, 703 N.E.2d 473 (1998), which provides that "a defendant may not bring a separate action for indemnification while the primary lawsuit is pending...." *Id.* at 483 (stating that "a defendant does have a choice of filing a third party complaint against a party who may be liable to indemnify him as part of the original action, or of waiting until the original action is over and filing a separate action for indemnity if he is found liable"). DIW argues that even if it cannot yet recover damages under the indemnity claim, it can obtain a declaratory judgment stating that LPH is obligated to indemnify DIW. The Seventh Circuit has indicated that "decisions about indemnity should be postponed until the underlying liability has been established." *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir.2003). DIW responds by pointing to *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677 (7th Cir.1992), which indicated that the rule barring declaratory relief in regards to indemnification prior to a determination of liability is not an absolute rule. *Id.* at 680. The Court in *Bankers Trust Co.* also stated that "a request

for such relief is addressed to the discretion of the district court." *Id.* at 682. DIW acknowledges that ruling on the indemnity issue at this juncture is a matter within this court's discretion, and DIW argues that ruling on the issue now would serve judicial economy. (DIW Reply 11). We agree. Defendants have not contested any of the material facts relating to the duty of LPH to indemnify DIW. Defendants admit that Erlich was planning to sell the Hotel early on in the term of the Agreement when he purchased inadequate insurance and furnished DIW with a falsified certificate of insurance. (GCI R DIW SF Par. 48); (LPH R DIW SF 48). Defendants have failed to point to any evidence that would create a genuinely disputed fact in regards to indemnity claims and, therefore, we grant DIW's motion for summary judgment on the indemnity claims and deny LPH's and Erlich's motion for summary judgment on those claims.

### 2. Duty to Defend

■ The duty to defend on the part of LPH is a separate matter from the obligation to indemnify. In regards to an insurance duty-to-defend case, "the general rule is that an actual controversy exists where an insured alleges that its insurer has a duty to defend him against potential liability in an underlying action" and "[a] duty-to-defend claim is ripe during the pendency of that action." *Molex Inc. v. Wyler,* 334 F.Supp.2d 1083, 1086 (N.D.Ill. 2004) (stating that "[b]ecause the duty to defend question usually does not depend on the outcome of the underlying action, there is no barrier to resolving that question before the underlying litigation is resolved"). Thus, the issue of whether LPH has a duty to defend DIW in the Guest Action is a ripe issue that can be adjudicated at this juncture.

Defendants argue that LPH does not have a duty to defend DIW because DIW refused to accept the counsel chosen by LPH. LPH and Erlich cite *Nandorf, Inc. v. CNA Ins. Companies,* 134 Ill.App.3d 134, 88 Ill.Dec. 968, 479 N.E.2d 988 (1985), for the proposition that "[t]he general rule under Illinois law is that an [indemnitor] controls the defense of its [indemnitee.]" (LPH Ans. DIW SJ 11). Defendants also point to provisions of the Agreement that indicate that LPH would have control over any defense pursued on behalf of DIW. Defendants fail, however, to provide the complete statement of the law in *Nandorf.* The Court in *Nandorf* also stated that "[w]hen conflicts arise, the Illinois Supreme Court has recognized a 'limited exception' to the general rule that an insurer controls the defense of its insured," and that "[t]he insured is entitled to assume control of his own defense in the underlying action." *Id.* at 991. This exception is based upon a concern that once the insurer and insured become antagonists, the insurer might utilize its right to select counsel to gain an advantage over the insured. *See In re New Era, Inc.,* 135 F.3d 1206, 1211 (7th Cir.1998) (stating that "[i]t is one thing for the insurer, pursuant to its duty to defend, to pick up the tab for the insured's lawyer; that is fine, ... [b]ut[,] as the cases we have just cited make clear, the insurer must, unless the insured consents, relinquish all control over the lawyer once insurer and insured turn out to have antagonistic interests"). DIW has submitted an exhibit consisting of a letter DIW sent to the counsel chosen by LPH in the Guest Action, informing the counsel that DIW intended to obtain separate counsel due to a "conflict of interest ... between" DIW and LPH. (DIW SF Ex. N). DIW has also filed another exhibit consisting of another letter sent by DIW to the counsel chosen by LPH indicating that DIW believed there was a conflict between DIW and LPH because LPH breached various provisions of the Agreement and DIW had a counterclaim pending

against LPH in the Guest Action. (DIW SF Ex. P). Defendants have not contested DIW's assertion that it stands in a position that is adverse to Defendants in both the Guest Action and the instant action. Neither have Defendants shown that they are being harmed by DIW's choice of counsel. Defendants have not, for example, shown that the counsel chosen by DIW for its defense in the Guest Action lacks the necessary expertise to present the defense. Therefore, we grant DIW's motion for summary judgment on the duty-to-defend claim.

### E. Breach of Insurance Obligations (Count Fourteen)

DIW argues that it is entitled to summary judgment on the breach of contract claim based upon the breach of the insurance obligations under the Agreement. Defendants admit, pursuant to Local Rule 56.1, that under Section 13(a) of the Agreement, "LPH was obligated to secure and maintain commercial general liability insurance for the [Hotel] and to name DIW as an Additional Insured." (GCI R DIW SF Par. 41); (LPH R DIW SF Par. 41). Defendants also admit that under the Agreement, LPH was required to obtain insurance coverage with "combined single limits of not less than Four Million Dollars ($4,000,000) per occurrence." (GCI R DIW SF Par. 41); (LPH R DIW SF Par. 41). Defendants also admit that LPH was obligated to provide DIW with a certificate of insurance indicating that LPH had complied with its insurance obligations under the Agreement. (GCI R DIW SF Par. 42); (LPH R DIW SF Par. 42).

Defendants admit that LPH failed "to maintain commercial general liability insurance to protect DIW" and "failed to obtain coverage that named DIW as an Additional Insured." (GCI R DIW SF Par. 46); (LPH R DIW SF Par. 46). Defendants also admit that LPH failed to obtain insurance in the amount required.

(GCI R DIW SF Par. 47); (LPH R DIW SF Par. 47). Erlich also acknowledged during his deposition that he did not obtain sufficient insurance coverage. (Erlich Dep. 37–38). Defendants also admit that Erlich told his insurance agent that "the [H]otel was up for sale and he just wanted to take the $2,000,000 in coverage, and if DIW pushed the issue he could 'ask for higher limits later.'" (GCI R DIW SF Par. 47); (LPH R DIW SF Par. 47). Finally, Defendants admit that LPH and Erlich provided DIW with a falsified certificate of insurance. (GCI R DIW SF Par. 48); (LPH R DIW SF Par. 48).

DIW asserts in Paragraph 48 of its statement of material facts ("Paragraph 48") that the certificate of insurance provided to DIW "claim[ed] coverage in appropriate amounts, and falsely claim[ed] that DIW ... [was an] Additional Insured under the ... policy." (DIW SF Par. 48). GCI does not respond to Paragraph 48. (GCI R DIW SF Par. 48). LPH and Erlich attempt to avoid responding to DIW's assertions that the certificate of insurance contained false information by stating only that "LPH and Erlich admit that LPH provided the Certificate of Liability Insurance dated August 27, 2004." (LPH R DIW SF Par. 48). LPH's and Erlich's response to Paragraph 48 is improper for two reasons. First, LPH and Erlich fail to provide a citation to the record to support their response. Local Rule 56.1; *Dent*, 2003 WL 22025008, at *1 n. 1. Second, LPH and Erlich also fail to respond to the facts in Paragraph 48 concerning false information in the certificate and instead only acknowledge that they provided DIW with a certificate of insurance. *Jankovich*, 2003 WL 260714, at *5. Therefore, Paragraph 48 is deemed to be undisputed pursuant to Local Rule 56.1. Based upon the undisputed facts, LPH breached its insurance obligations under the Agreement and we grant DIW's mo-

tion for summary judgment on the breach of contract claim based upon the breach of the insurance obligations under the Agreement (Count Fourteen).

### F. Breach of Guaranty Agreement (Count Fifteen)

DIW argues that it is entitled to summary judgment on the breach of the Guarantee Agreement claim and Defendants move for summary judgment on the claim as well. Defendants admit that Erlich entered into the Guaranty Agreement under which, among other things, he would be obligated to "immediately make all payments and/or perform all obligations required under the [Agreement.]" (GCI R DIW SF Par. 20); (LPH R DIW SF Par. 20). Defendants have not provided any justification why Erlich should not be held liable in accordance with the terms of the Guaranty Agreement. Therefore, we grant DIW's motion for summary judgment on the Guaranty Agreement claim (Count Fifteen).

### III. Unjust Enrichment Claims (Count Eight)

DIW moves for summary judgment on its unjust enrichment claims (Count Eight). However, since we have granted DIW's motion for summary judgment on all of its breach of contract claims, DIW's unjust enrichment claim is dismissed as moot since DIW has been provided with a recovery on its breach of contract causes of action. *See ShopLocal LLC v. Cairo, Inc.*, 2006 WL 495942, at *2 (N.D.Ill.2006) (stating that "[i]f an unjust enrichment claim is predicated on a contract, a plaintiff may not recover for both unjust enrichment and breach of contract"). Therefore, we deny DIW's motion for summary judgment on the unjust enrichment claim and dismiss the claim in Count Eight as moot.

### IV. Damages

DIW moves for summary judgment on the issue of damages. DIW seeks $219,055.00 for liquidated damages plus interest, $1,135.00 for addendum liquidated damages plus interest, $215,000.04 for damages under the trademark claims and related state law claims, and $17,141.49 for unpaid recurring fees and interest.

### A. Liquidated Damages (Count Eleven)

DIW argues that it is entitled to summary judgment on the issue of liquidated damages. Defendants concede that the Agreement contained a liquidated damages provision for breaches of the Agreement and that LPH and Erlich owe $193,000.00 in liquidated damages. (GCI R DIW SF Par. 31, 68); (LPH R DIW SF Par. 31, 68). Erlich himself acknowledged at his deposition that he "definitely" owes DIW $193,000.00 in liquidated damages. (Erlich Dep. 47–49). DIW also contends that Erlich owes $26,055.00 in interest. (DIW SF Par. 68). LPH and Erlich object to the rate of interest, but fail to show that the rate is improper. *See Travelodge Hotels, Inc. v. Honeysuckle Enterprises, Inc.*, 2005 WL 3164205, at *10 (D.N.J.2005) (stating that "[p]rejudgment interest may be determined by contract"). Therefore, we grant DIW's motion for summary judgment on the liquidated damages claim and award DIW the amount of $219,055.00.

LPH and Erlich also concede that they owe $1,000.00 for addendum liquidated damages. (GCI R DIW SF Par. 72); (LPH R DIW SF Par. 72). LPH and Erlich contest the award of $135.00 in interest for addendum liquidated damages, but they fail to provide a citation to the record to support the response to DIW's statement of material facts and, thus the amount of interest is deemed to be undisputed and is appropriate. Therefore, we

also award DIW $1,135.00 for addendum liquidated damages plus interest.

### B. Remaining Damages Issues

DIW also moves for summary judgment on the damages award for the trademark claims and related claims. DIW contends that the evidence shows that Defendants willfully violated the Lanham Act, making treble damages appropriate. DIW seeks $215,000.04 for damages under the trademark claims and related claims. DIW also seeks $17,099.04 for unpaid recurring fees and interest. We agree that, based upon the admissions made by Defendants, Defendants willfully violated the Lanham Act. In addition, Defendants have not presented any objections as to the requested damages. There are no genuinely disputed facts concerning such damages. Therefore, we award DIW $215,000.04 for damages under the trademark claims and related state law claims and $17,099.04 for unpaid recurring fees and interest. DIW also requests reasonable attorneys' fees and Defendants have not disputed that attorneys' fees are owed. We find that a reasonable amount for attorneys' fees is one third of the total damages award and, therefore, award $150,763.03 in attorneys' fees.

### CONCLUSION

Based on the foregoing analysis, we grant DIW's motion for summary judgment on Counts One, Two, Three, Four, Five, Six, Nine, Thirteen, Fourteen, and Fifteen. We deny DIW's motion for summary judgment on the unjust enrichment claim and dismiss the claim in Count Eight as moot. We also grant DIW's motion for summary judgment in regards to liquidated damages plus interest and addendum liquidated damages plus interest. We also grant DIW's motion for summary judgment in regards to damages under the trademark claims and related state law claims and damages for unpaid recurring fees and interest.

### MEMORANDUM OPINION

This matter is before the court on the parties' motions for reconsideration. For the reasons stated below, we grant in part and deny in part the motions for reconsideration.

### BACKGROUND

Plaintiff Days Inn Worldwide, Inc. ("DIW") claimed that it entered into a licensing agreement ("Agreement") with Defendant Lincoln Park Hotels, Inc. ("LPH"), under which LPH was authorized to operate a hotel ("Hotel") using trademarks owned by DIW ("Days Inn Marks"). DIW claimed that LPH failed to honor its insurance and indemnification obligations under the Agreement and LPH sold the Hotel to Defendant Gold Coast Investors ("GCI") without obtaining DIW's consent. GCI then continued to operate the Hotel using the Days Inn Marks without the authorization of DIW. DIW brought the instant action and included in the complaint trademark infringement claims alleging violations of 15 U.S.C. § 1114(1)(a) and 15 U.S.C. § 1125(a) (Counts I and II), a trademark dilution claim based upon a violation of 15 U.S.C. § 1125(c) (Count III), an Illinois Deceptive Trade Practices Act ("IDTPA"), 815 ILCS 510/1 et seq., claim (Count IV), an Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1 et seq., claim (Count V), a common law unfair competition claim (Count VI), an accounting claim (Count VII), an unjust enrichment claim (Count VIII), a breach of contract claim based upon a breach of the post-termination obligations (Count IX), a breach of contract claim based upon a breach of the obligation to pay recurring fees (Count X), a

breach of contract claim for liqui damages (Count XI), an alternative breach of contract claim for expectancy damages (Count XII), a breach of contract claim based upon a breach of the obligations to indemnify and defend DIW (Count XIII), a breach of contract claim based upon a breach of the insurance obligations (Count XIV), and a breach of guaranty claim against Defendant Richard Erlich ("Erlich") (Count XV).

On February 20, 2007, we granted DIW's motion for summary judgment on Counts I, II, III, IV, V, VI, IX, X, XI, XIII, XIV, and XV. We denied DIW's motion for summary judgment on the unjust enrichment claim and dismissed the claims in Counts VII, VIII, and XII as moot. We also granted DIW's motion for summary judgment in regard to liquidated damages plus interest and addendum liquidated damages plus interest. In addition, we granted DIW's motion for summary judgment as to damages under the trademark claims and related state law claims and as to damages for unpaid recurring fees and interest. Finally, based upon the exceptional circumstances in this case and Defendants' knowing and willful misconduct, we awarded DIW $150,763.03 in attorneys' fees. Erlich and LPH have filed a joint motion for reconsideration and GCI has filed a separate motion for reconsideration. Defendants request that the court reconsider its ruling on February 22, 2007, pursuant to Federal Rule of Civil Procedure 59(e) ("Rule 59(e)") solely in regard to the award of attorneys' fee.

Although, DIW has not filed a separate motion to reconsider, DIW has stated in its answer to the motions for reconsideration that it seeks a reconsideration of the attorneys' fees award as well. Defendants have not objected to the manner of the presentation of DIW's motion, but rather have acknowledged DIW's motion and have responded to the motion. (LPH Re-

ply 4). DIW has submitted a detailed explanation of DIW's proposed fee award calculation along with supporting documentation. Only Erlich and LPH have objected to the attorneys' fees award calculation and both have had the opportunity to review DIW's documentation and to respond in their reply briefs to DIW's position regarding the attorneys' fees award. (LPH Reply 5–7). Thus, DIW's motion for reconsideration as to attorneys' fees has been sufficiently briefed and we will proceed at this juncture to rule upon DIW's motion for reconsideration as well as Defendants' motions.

## LEGAL STANDARD

Rule 59(e) permits parties to file, within ten days of the entry of a judgment, a motion to alter or amend the judgment. Fed.R.Civ.P. 59(e). Rule 59(e) motions do not give a party the opportunity to rehash old arguments or to present new arguments or evidence "that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir.1996) (citing *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir.1995)). Rather, for a Rule 59(e) motion, the movant " 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' " in order to be successful. *LB Credit Corp.*, 49 F.3d at 1267 (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986)). The decision of whether to grant or deny a motion brought pursuant to Rule 59(e) "is entrusted to the sound judgment of the district court. . . ." *In re Prince*, 85 F.3d 314, 324 (7th Cir.1996).

## DISCUSSION

Defendants argue that the court erred in failing to require DIW to file a motion for attorneys' fees and erred in failing to allo-

cate the attorneys' fee award as to each count and each Defendant. Defendants also contend that the court erred in determining the amount of the attorneys' fee award.

## I. Motion for Attorneys' Fees

Defendants argue that the court erred in failing to require DIW to file a motion for attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d)(2) ("Rule 54(d)(2)") and to consult with Defendants in accordance with Local Rule 54.3(d). Defendants request that the court strike the attorneys' fees award and require DIW to file documents and provide Defendants with information in accordance with Rule 54(d)(2) and Local Rule 54.3. Rule 54(d)(2) provides that "[c]laims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial." Fed. R.Civ.P. 54(d) (2)(A). Local Rule 54.3 provides procedures regarding attorneys' fees recoupment, such as procedures for resolving attorneys' fees disputes. LR 54.3.

In the instant action, Defendants argue that the court prematurely awarded attorneys' fees in the summary judgment ruling and that the court should have required DIW to file a motion for attorneys' fees and to meet and discuss the fee issue with Defendants. DIW originally sought attorneys' fees in its motion for summary judgment in December 2006. (D SJ. Mem. 15). DIW correctly points out that in response to DIW's motion for summary judgment, Defendants "did not oppose DIW's entitlement to attorneys' fees and costs in the event the Court grated summary judgment in its favor." (Ans.Mem.1). DIW also correctly notes that the entry of an attorneys' fees award along with the ruling on the dispositive motions was based upon the court's familiarity with the case and the decision was made in an effort to spare the parties the additional expenses associated with briefing the attorneys' fees issues.

Defendants contend that at the time of the court's ruling on the dispositive motions, they were not provided with a sufficient opportunity to review billing records to assess a proper attorneys' fee award. However, to the extent that there was any prejudice to Defendants, that prejudice has been removed since DIW has presented in its answer to the motions for reconsideration a detailed explanation for the attorneys' fees calculation as well as supporting documentation. Defendants have also been given an opportunity to respond to DIW's position in Defendants' reply briefs. To the extent that Local Rule 54.3 provides for specific procedures regarding attorneys' fees, this court has discretion in determining if such procedures in the Local Rules are warranted in a particular instance. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 n. 4 (7th Cir.1994) (stating that "[t]he district court's interpretation of its own rules is, of course, due considerable deference"). DIW has indicated that DIW's counsel has already met with Defendants' counsel and attempted to reach an agreement on the appropriate amount of fees, but the parties were unable to reach an agreement. (Ans. Mem. 2 n. 1). Therefore, we conclude that the issues concerning attorneys' fees in this case have been sufficiently briefed by the parties at this stage and sufficient documentation has been presented by DIW for the issues to be resolved at this juncture. We conclude that no further filings or exchanges by the parties regarding attorneys' fees are necessary at this juncture to resolve the issue of attorneys' fees. Additional efforts by the parties would not promote judicial economy or the efficient operation of the judicial system. Therefore, we deny Defendants' request for additional filings and briefing in regard to the issue of attorneys' fees.

## II. Allocation of Attorneys' Fees Award

■ GCI argues that the court erred by failing to state for which counts the attorneys' fees were awarded and the amount allocated to each count. GCI contends that the "majority of improper acts were done by LPH and Erlich" and that it is not fair to hold GCI liable for the full attorneys' fee award. (GCI Reply 3). However, GCI cannot minimize its role in this matter. The undisputed facts based on the summary judgment filings showed that GCI was a knowing and willing partner with LPH and Erlich in the breach of the Agreement with DIW.

In addition, although GCI argues that this court must allocate damages by each count and each Defendant, in support of its allocation argument GCI erroneously states that "[t]he Seventh Circuit holds that 'the existence of a contractual provision obligating one party to pay attorney fees does not relieve the other of its burden to establish the reasonableness of the amount requested.'" (GCI Mot. 2). In actuality, the opinion from which GCI is quoting is a district court's opinion, which in turn is quoting an Illinois Appellate court's opinion, rather than a Seventh Circuit opinion. *See Chamberlain Mfg. Corp. v. Maremont Corp.*, 1995 WL 769782, at *2 (N.D.Ill.1995) (quoting *Kaiser v. MEPC American Properties, Inc.*, 164 Ill.App.3d 978, 115 Ill.Dec. 899, 518 N.E.2d 424, 428 (Ill.App.Ct.1987)). GCI cites no controlling precedent that shows that the allocation sought by GCI is required by law or is warranted in this case. (GCI Mot. 1–3).

DIW does not object to a limited allocation of some costs that can be attributed solely to LPH and Erlich, and DIW has provided documentation to show that $45,857.00 in attorneys' fees associated with the following briefing could be severable: (1) briefing of LPH's motion for a protective order, (2) DIW's motion to compel LPH and Erlich to comply with discovery requests, (3) LPH's motions for judgment on the pleadings and summary judgment, and (4) briefing on whether the court should exercise its discretion to declare DIW's right to indemnity and defense. Our prior attorneys' fee award was based upon the record before us at that juncture, and based upon the new documentation and representations presented by DIW, we agree that $45,857.00 can properly be allocated solely against LPH and Erlich. Defendants have failed, however, to show that any other changes need to be made in the allocation of the attorneys' fees award.

## III. Amount of Attorneys' Fees Award

Defendants argue that the court should decrease the award of $150,763.03 in attorneys' fees to "an amount not in excess of $100,000" and DIW argues that the court should increase the award to $185,748.50. (LPH Reply 7); (DIW Ans. 2). A proper method for determining a reasonable amount of attorneys' fees is the lodestar method. *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 569 (7th Cir.2006). Under the lodestar method, the court first calculates a lodestar amount, which "is arrived at by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate." *Id.* A rate for an attorney's work is deemed reasonable if it is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the kind of work in question." *Stark v. PPM America, Inc.*, 354 F.3d 666, 674–75 (7th Cir.2004) (stating that "[t]he burden of proving the market rate is on the applicant"). The lodestar calculation cannot include work hours that were "excessive, redundant, or otherwise unnecessary." *Id.* at 674 (stating that "the hours claimed can be reduced by the number of hours spent litigating claims on which the party did not succeed to the extent they

were distinct from claims on which the party did succeed").

■ Once the court has calculated the lodestar amount, "the district court may adjust the amount up or down to take into account various factors regarding the litigation." *Mathur v. Board of Trustees of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003). Such factors include: (1) "the time and labor required," (2) "the novelty and difficulty of the questions," (3) "the skill requisite to perform the legal services properly," (4) "the preclusion of employment by the attorney due to acceptance of the case," (5) "the customary fee; whether the fee is fixed or contingent," (6) "time limitations imposed by the client or the circumstances," (7) "the amount involved and the results obtained," (8) "the experience, reputation, and ability of the attorneys," (9) "the 'undesirability' of the case," (10), "the nature and length of the professional relationship with the client," and (11) "awards in similar cases." *Id.* n. 1. Defendants argue that the attorneys' fees award should be reduced. DIW contends, on the other hand, in response to the motion for reconsideration, that it has reviewed its billing records and has discovered that the amount of attorneys' fees awarded by the court is $18,409.47 less than the actual costs for fees that should be charged to Defendants. DIW also contends that it has incurred additional fees in preparing the briefing for Defendants' motions for reconsideration.

## A. Hours of Work

■ DIW has provided the rates and documentation for the attorneys' fees that it now seeks. Defendants argue that many of the issues in this case were uncontested and that DIW's request is thus excessive based upon the time and labor required. We disagree. Based upon the amount of discovery that would reasonably be anticipated in a case like this and the research and filings associated with the cross motions for summary judgment and other motions, the amount of hours calculated by DIW is reasonable. DIW has presented billing records and an affidavit explaining DIW's proposed award of attorneys' fees, indicating that attorneys worked on issues regarding matters such as the permanent injunction order, a conflict of interest, and the dispositive motions. None of the hours appear to be redundant, unnecessary, or excessive. Therefore, we find the amount of hours calculated by DIW to be reasonable.

Defendants also argue that the legal issues presented in the instant action were not novel, that no real skill was required to perform legal services for DIW, and that the attorneys' fees award should be accordingly reduced. If this action had involved novel issues of law, more attorneys' fees than are currently listed in DIW's request could have reasonably been anticipated. The amount of hours included in DIW's request is reasonable considering the legal issues presented in this case. Although Defendants attempt to minimize the instant action as a typical run-of-the mill case, DIW's attorneys clearly needed a certain degree of skill and knowledge to address the issues that arose in this case and to present DIW's position properly. Finally, Defendants argue that since DIW is a "long-time client of" the law firm that represented it in the instant action, the attorneys' fees award should be reduced since the law firm must have had previous knowledge concerning DIW's financial dealings. (LPH Reply 6). However, DIW has shown that none of the work listed in their request, which is based upon a unique set of facts in this case, was redundant or excessive. General familiarity by DIW's counsel with DIW's business agreements or business dealings would not mean that counsel could avoid the work listed in the documentation provided by

DIW for this case. Therefore, based on the record before us, and after consideration of all of the above mentioned factors, we conclude that the amount of attorney work hours calculated by DIW is proper.

### B. Hourly Rates

 Defendants also argue that DIW's law firm charged excessive rates. DIW has provided a detailed explanation for the rates included in its fee request. We find that, based upon the record before us, the rates charged are reasonably close to those charged by attorneys of similar experience and backgrounds. Defendants specifically challenge the hourly rate of Paula Morency ("Morency"), which increased from $480 per hour to $510 per hour. (LPH Reply 7). However, DIW explains that Morency's hourly rates increased in January 2007 as part of the ordinary course of business at the law firm and DIW has shown that her new rate does not appear to be excessive. Therefore, we find that based on the record before us, the hourly rates charged by DIW's attorneys were reasonable. Based on the above, Defendants have not provided sufficient justification to decrease the award of attorneys' fees and DIW has shown that its proposed increase in the award is appropriate. Therefore, we amend the award of attorneys' fees and award DIW the amount of $185,748.50 in attorneys' fees. We also note that DIW has referenced in its answer that it seeks recoupment for certain costs. Such costs should be submitted in an appropriate bill of costs to the court in accordance with Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920.

### CONCLUSION

Based on the foregoing analysis, we grant in part and deny in part Defendants' motions for reconsideration and grant DIW's motion for reconsideration. Our order dated February 22, 2007, is amended to award DIW $185,748.50 in attorneys' fees. LPH and Erlich are jointly and severally liable for $45,857.00 in attorneys' fees, and GCI, LPH, and Erlich are jointly and severally liable for the remaining $139,891.50 of attorneys' fees.