**METROPCS, a brand of T-Mobile USA, Inc., a Delaware Corporation, Plaintlff,**

v.

**Mark DEVOR a/k/a Marcus W. Devor and Sheldon Chase a/k/a Chase Sheldon a/k/a Blu Chase, Defendants.**

**Case No. 1:16-cv-02949**

United States District Court,
N.D. Illinois, Eastern Division.

10/07/2016

Signed 10/14/2016

Alana E. Zorrilla-Gaston, James Blaker Baldinger, Stacey Kim Sutton, Carlton Fields Jorden Burt, P.A., West Palm Beach, FL, Lawrence Harris Heftman, Schiff Hardin LLP, Chicago, IL, for Plaintiff.

## FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS

JUDGE MILTON I. SHADUR,
UNITED STATES DISTRICT JUDGE

Plaintiff T-Mobile USA, Inc., a Delaware corporation ("T-Mobile"), for itself and its MetroPCS brand (collectively referred to hereinafter as "MetroPCS") brought the above-captioned lawsuit against Defendants Mark Devor a/k/a Marcus W. Devor and Sheldon Chase a/k/a Chase Sheldon a/k/a Blu Chase (collectively "Defendants"), alleging that Defendants are engaged in an unlawful enterprise involving the unauthorized and deceptive acquisition and bulk resale overseas of specially-manufactured handsets designed for use on MetroPCS's wireless service (collectively, "MetroPCS Handsets"), the theft of MetroPCS's subsidy investment in the Handsets, the unlawful access of MetroPCS's protected computer systems and wireless

network, the trafficking of MetroPCS's protected and confidential computer passwords, and the willful infringement of MetroPCS's trademarks (collectively, the "Handset Theft and Trafficking Scheme" or the "Scheme").

MetroPCS contends that Defendants and their co-conspirators perpetrated the Handset Theft and Trafficking Scheme by acquiring large quantities of MetroPCS Handsets ("Handsets") from MetroPCS and/or MetroPCS authorized retailers and dealers and by soliciting others to purchase MetroPCS Handsets in large quantities for the benefit of Defendants. Plaintiff asserts that Defendants and their co-conspirators acquired the MetroPCS Handsets with the knowledge and intent that the Handsets will not be used on the MetroPCS wireless network (as required by the MetroPCS terms and conditions), but instead, the Handsets are trafficked and the vast majority are ultimately resold as new overseas where the Handsets are not subsidized by wireless carriers (as they are in the United States). MetroPCS further asserts that Defendants acquired the Handsets with the knowledge and intent that the Handsets will be computer-hacked or "unlocked," to disable software installed in the Handsets by the manufacturers at the request and expense of MetroPCS, which enables the activation of the MetroPCS Handsets exclusively on MetroPCS's wireless system. The purpose of the software is to allow MetroPCS, which is a service provider not a cell phone retailer, to offer the Handsets at a discount to the consumer while protecting MetroPCS's subsidy investment in the Handset. MetroPCS asserts that the illegally unlocked Handsets are trafficked and resold as new by Defendants, at a premium, under the MetroPCS trademarks.

MetroPCS Handsets are sold subject to terms and conditions ("Terms and Condi-

tions") which conspicuously restrict and limit the sale and use of the Handsets. The packaging of every MetroPCS Handset provides that by purchasing or opening the package, activating, using, or paying for MetroPCS service, the purchaser agrees to the MetroPCS Terms and Conditions posted on www.metropcs.com. Purchasers have the option to return the MetroPCS Handset in accordance with the return policy if they do not agree to the Terms and Conditions. The methods used by MetroPCS for obtaining its customers' agreement to the Terms and Conditions are legally valid and appropriate, and the Terms and Conditions constitute a valid and binding contract between MetroPCS and each of its customers. Pursuant to the Terms and Conditions of MetroPCS Handsets, purchasers agree, among other things: (a) to pay the applicable service charges and other related fees; (b) to activate the MetroPCS Handsets on the MetroPCS network; (c) not to resell the MetroPCS Handsets and related products and services; and (d) not to use the Handsets for a purpose that could damage or adversely affect MetroPCS.

In this case, as a result of Defendants' involvement in the Handset Theft and Trafficking Scheme, MetroPCS has asserted claims against Defendants for tortious interference with existing business relations and prospective economic advantage, conspiracy to defraud, unjust enrichment, common law fraud and fraudulent misrepresentation, trafficking in computer passwords, 18 U.S.C. § 1030(a)(6), unauthorized access, 18 U.S.C. § 1030(a)(5)(C), federal trademark infringement, 15 U.S.C. § 1114 [§ 32(1) of the Lanham Act], federal common law trademark infringement and false advertising, 15 U.S.C. §§ 1125(a)(1)(A) and (B) [§ 43(a) of the Lanham Act], contributory trademark infringement, conversion, deceptive trade practices (815 ILCS 505 et seq.) and common law unfair competition, tortious inter-

ference with contractual relations, and conspiracy to induce breach of contract.

This Court has jurisdiction over all of the parties and all of the claims set forth in MetroPCS's Complaint.

## I. Standard of Review

"Pursuant to Federal Rule of Civil Procedure 55, the court may enter a judgment by default when the non-moving party has 'failed to plead or otherwise defend' itself." *Kinsey v. Jambow, Ltd.*, 76 F.Supp.3d 708, 710 (N.D. Ill. 2014). "The decision to grant or deny default judgment lies within the district court's discretion and is reviewed only for an abuse of discretion." *Id.* (citing *Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014) (citation omitted)). "Upon default, the well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). As Defendants have not responded to any of the allegations against them in this action, all of the Plaintiff's factual allegations, except as to damages, are taken as true.

## II. MetroPCS Has Properly Pled Its Claims For Default Judgment Against Defendants

### A. Trademark Claims (Counts 7-9)

 To establish trademark infringement, a plaintiff must prove that it has a valid, protectable mark, and that Defendants' use of the mark is likely to create confusion. *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673–74 (7th Cir. 2001); 15 U.S.C. §§ 1114(1)(a) and 1125(a)(1)(A). Contributory infringement extends to "all those who knowingly play a significant role in accompanying the unlawful purpose." *TracFone Wireless, Inc.*

*v. Anadisk LLC*, 685 F.Supp.2d 1304, 1311 (S.D. Fla. 2010).

█ Plaintiff has properly alleged that it has the right to use and enforce the MetroPCS Marks on and in connection with its telecommunications products and services. MetroPCS has the right to use and enforce rights in the standard character and stylized MetroPCS® mark (collectively, the "MetroPCS Marks"), as depicted below:

**metro**PCS. **metro**PCS.

MetroPCS uses the MetroPCS Marks on and in connection with its telecommunications products and services. The MetroPCS Marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with MetroPCS.

Defendants use the federally-registered MetroPCS Marks without authorization in connection with their conspiracy to sell and offer for sale materially different MetroPCS Handsets, removed from packaging, carrying a bad IMEI, and/or devoid of the manufacturer's warranty. Further, Defendants' use of certain federally registered MetroPCS Marks has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source or origin of Defendants' infringing products, and the relationship between Plaintiff and Defendants. By misappropriating and using the MetroPCS Marks in connection with their Scheme, Defendants knowingly aided and enabled distributors and/or sellers of the products to market them to members of the general public in a way that infringes the MetroPCS Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception. Defendants' commission of the foregoing intentional acts in commerce has damaged and will continue to damage MetroPCS.

Under a claim for false advertising, Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) makes it unlawful for "[a]ny person who ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). As supported by the allegations within the Complaint, the Court finds Defendants' use of the MetroPCS Marks misrepresents the nature, characteristics, and/or qualities of their infringing products. Defendants' use of the MetroPCS Marks is false or misleading, deceives, or has the capacity to deceive, consumers and their deception and misrepresentations have a material effect on purchasing decisions and affect interstate commerce. As such, entry of default judgment against Defendants on MetroPCS's trademark claims is warranted.

### B. Deceptive Trade Practices (815 ILCS 505 et seq.) and Common Law Unfair Competition (Count 11)

Under Illinois law, the same test for federal trademark infringement applies to deceptive trade practices and common law unfair competition claims. *See Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1219 (7th Cir. 1997). As set forth above, MetroPCS has established liability under the Lanham Act. Therefore, MetroPCS is entitled to default judgment against Defendants on its deceptive trade practices and common law unfair competition claim.

## C. Tortious Interference with Existing Business Relations and Prospective Economic Advantage Claim (Count 1)

██ "Under Illinois law, the elements of a tortious interference claim are: "(1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiffs expectancy; (3) purposeful and unjustified interference by the defendant that prevents the plaintiffs legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Pampered Chef v. Alexanian*, 804 F.Supp.2d 765, 807 (N.D. Ill. 2011) (internal quotations and brackets omitted) (citing *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009)). The Court finds MetroPCS adequately pled a business relationship and an expectancy of business relationships exists between MetroPCS and authorized dealers and retailers of MetroPCS products and services and between MetroPCS and current and prospective customers. As a result of these current and prospective business relationships, there is a high probability of substantial future economic benefit to MetroPCS. Defendants have knowledge of these business relationships and Defendants' business model preys on MetroPCS's relationships. Defendants have specifically and intentionally interfered with the relationships, which has substantially harmed Plaintiff. The Court finds Defendants' conduct constitutes tortious interference, and MetroPCS is entitled to default judgment as to its tortious interference with existing business relations and prospective economic advantage claim.

## D. Conspiracy to Defraud (Count 2)

██ Under Illinois law, a claim for conspiracy to commit fraud requires: "(1) a conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud." *GMAC, LLC v. Hillquist*, 652 F.Supp.2d 908, 922 (N.D. Ill. 2009) (quoting *Bosak v. McDonough*, 192 Ill.App.3d 799, 139 Ill.Dec. 917, 549 N.E.2d 643, 646 (Ill. App. Ct. 1989)). The Court finds MetroPCS sufficiently pled an agreement and conspiracy existed between and among the Defendants and other co-conspirators to illicitly acquire, advertise, traffic, and resell unlawfully unlocked and materially-different MetroPCS Handsets under at least one of the MetroPCS Marks. This conspiracy results in violations of federal and state laws, *inter alia*, federal common law and statutory trademark infringement, common law unfair competition, contributory trademark infringement, tortious interference with business relations and prospective economic advantage, unjust enrichment, and violations of the Computer Fraud and Abuse Act. Defendants knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy, which includes identifying runners who obtain MetroPCS Handsets in large quantities to unlawfully sell to co-conspirators, purchasing MetroPCS Handsets in large quantities at MetroPCS stores in Illinois and other parts of the country with no intent to ever activate these Handsets on the MetroPCS network, and selling these unlawfully obtained MetroPCS Handsets for a substantial profit and to the detriment of MetroPCS. Thus, MetroPCS is entitled to default judgment against Defendants on its conspiracy to defraud claim.

## E. Unjust Enrichment (Count 3)

██ To state a cause of action for unjust enrichment, a plaintiff must establish: "(1) the defendant has unjustly retained a benefit to the plaintiff's detriment, and (2) the defendant's retention of the benefit

violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672, 679 (Ill. 1989). MetroPCS sufficiently pled that by fraudulently acquiring new MetroPCS Handsets for use on other wireless networks, Defendants obtained significant benefits from Plaintiff, in the form of Plaintiffs substantial investments in the new MetroPCS Handsets. Through resale of new MetroPCS Handsets, Defendants retained substantial financial gain and caused significant financial harm to Plaintiff. Defendants voluntarily and fraudulently acquired such benefits and it is unjust and inequitable for Defendants to retain them without paying Plaintiff the value of the benefits acquired. MetroPCS is entitled to judgment on its unjust enrichment claim.

### F. Common Law Fraud and Fraudulent Misrepresentation (Count 4)

■ Under Illinois law, a claim for fraud or fraudulent misrepresentation requires: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiffs reliance upon the truth of the statement; and (5) plaintiffs damages resulting from reliance on the statement." *Tricontinental Indus. v. Pricewaterhouse-Coopers, L.L.P.*, 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 591 (Ill. 1996)).

■ MetroPCS sufficiently pled Defendants, directly and through their co-conspirators, regularly misrepresent and make fraudulent statements to MetroPCS and its agents that the brand new Handsets are acquired by a legitimate account holder for, a legitimate purpose and that the new Handsets will be used on Me-

troPCS's wireless network and in accordance with the Terms and Conditions. Defendants know all of these representations are false, intend for MetroPCS to rely on the misrepresentations, and MetroPCS's reliance on these misrepresentations is reasonable. MetroPCS has been damaged and continues to suffer damages as a result of Defendants' actions. Therefore, MetroPCS is entitled to default judgment against Defendants on its fraud claim.

### G. Computer Fraud and Abuse Act Claims (Counts 5–6)

The Computer Fraud and Abuse Act under 18 U.S.C. § 1030 *et seq.* ("CFAA") is a computer hacking statute that addresses the kind of misconduct perpetrated by Defendants. The Complaint alleges two claims under the CFAA: (1) Trafficking in Computer Passwords under 18 U.S.C. § 1030(a)(6) (Count 5), which; and (2) Unauthorized Access under 18 U.S.C. § 1030(a)(5)(C) (Count 6). Section 1030(a)(5)(C) makes it unlawful to intentionally access a protected computer without authorization and cause damage and loss. 18 U.S.C. §§ 1030 (a)(5)(C), (c)(4)(A)(i)(I), and (g). A claim under 18 U.S.C. § 1030 (a)(6) requires that: (1) defendants knowingly; (2) trafficked in; (3) a computer password; (4) in a manner that affects interstate commerce. *See* 18 U.S.C. §§ 1030(a)(6), (c)(4)(A)(i)(I), and (g).

■ MetroPCS Handsets are loaded with confidential codes/passwords that access (a) Plaintiffs national telecommunications computer network to make and receive wireless voice calls and to transmit data; and (b) Plaintiffs computer billing network (collectively, the "protected computer networks"). MetroPCS protects access to these computer networks through, *inter alia*, the confidential codes/passwords contained in the Handsets. When MetroPCS acquires the Handsets, the

Handsets are normally connected to and activated on MetroPCS's protected computer networks. MetroPCS's proprietary computer system holds confidential information and provides access to MetroPCS customer accounts; it is connected to the internet and assists in providing federally-regulated telecommunications services. MetroPCS sufficiently pled that Defendants and their co-conspirators use fraud and misrepresentation to acquire new Handsets from MetroPCS, and in doing so, Defendants' access of Plaintiff's protected computer networks is not authorized in any way. Defendants knowingly and with the intent to defraud, access Plaintiff's proprietary computer systems, which they are not authorized to do, and traffic in the confidential codes/passwords contained in the Handsets. Defendants' transfer of the Handsets and confidential codes/passwords to others constitutes "trafficking" of the codes/passwords as defined in 18 U.S.C. § 1029.

The codes contained in the Handsets are trafficked throughout the United States, and ultimately around the world, and therefore, Defendants' activities substantially affect interstate commerce and communication. Further, Defendants' unauthorized access of Plaintiffs protected computer networks has caused and will continue to cause MetroPCS to suffer injury, with "damages" and "losses," as defined in Sections 1030(e)(8) and 1030(e)(11), substantially in excess of $5,000 over a one-year period. Based on the allegations of the Complaint and the Declarations submitted in support of MetroPCS's Motion for Final Judgment and Permanent Injunction, the Court finds MetroPCS lost its investments in the trafficked Handsets and spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its hacked protected computer networks, taking action to counteract Defendants' theft,

and conducting a damage assessment regarding Defendants' collection and dissemination of MetroPCS Handsets with the codes/passwords. By infiltrating the MetroPCS protected computer networks and collecting and disseminating the illicitly-acquired Handsets with the codes/passwords, Defendants have substantially impaired the integrity of MetroPCS's protected computer networks in an amount in excess of $5,000. MetroPCS is entitled to default judgment against Defendants as to the claims made under CFAA.

### H. Conversion (Count 10)

 "[A] plaintiff has a cause of action for conversion where (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully assumed control, dominion, or ownership over the property." *Gates v. Towery*, 435 F.Supp.2d 794, 800 (N.D. Ill 2006) (citation omitted). The court finds the Complaint sufficiently pled that MetroPCS has the right to provide MetroPCS Handsets and wireless service to the public and Defendants have no such privilege or right. Defendants obtained the new Handsets through illegitimate means and had no legal right to advertise, use or resell them. Defendants wrongfully interfered with Plaintiffs rights by engaging in the Handset Theft and Trafficking Scheme and wrongfully exercised dominion and control over the Handsets and the MetroPCS Marks, in a manner inconsistent or in defiance of Plaintiff's rights therein. Defendants' conduct resulted in substantial harm to MetroPCS, and accordingly, MetroPCS is entitled to default judgment against Defendants on its conversion claim.

### I. Tortious Interference with Contractual Relations (Count 12)

 Under Illinois law, tortious interference with contractual relations re-

quires: "(1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of the contractual relationship; (3) the defendant's intentional and, if defendant's conduct is privileged, unjustified inducement of a breach of the contract; (4) a subsequent breach by the third party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach." *Servpro Indus., Inc. v. Schmidt*, 905 F.Supp. 470, 475 (N.D. Ill. 1995) (citation omitted). MetroPCS sufficiently pled a contractual relationship exists between MetroPCS and authorized dealers of MetroPCS Handsets, and between MetroPCS and its customers as set forth in the governing terms and conditions. Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with, these contracts between MetroPCS, its authorized dealers, and legitimate customers. Defendants interfered with these relationships by, *inter alia*, affirmatively soliciting and inducing runners and credit mules or other purchasers of MetroPCS products to breach the terms and conditions that govern the acquisition of new Handsets, and by inducing authorized MetroPCS dealers to breach their agreements with Plaintiff by providing new MetroPCS Handsets to Defendants for a purpose other than activation on the MetroPCS network. Defendants engaged in the acts of interference with a conscious desire to induce breach of contract, or Defendants knew that breach of contract was certain or substantially certain to occur as a result of their conduct, and MetroPCS has been damaged and continues to be damaged as a result of Defendants' interference. As such, MetroPCS is entitled to default judgment against Defendants on this claim.

### J. Conspiracy to Induce Breach of Contract (Count 13)

To prove a conspiracy to induce breach of contract, a plaintiff must demonstrate: "(1) a combination of two or more persons; (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means; (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Giles v. Chicago Drum, Inc.*, 631 F.Supp.2d 981, 988 (N.D. Ill. 2009) (quoting *Fritz v. Johnston*, 209 Ill.2d 302, 282 Ill.Dec. 837, 807 N.E.2d 461, 470 (Ill. 2004)). MetroPCS sufficiently pled that Defendants induced breach of contract as a result of actively soliciting runners and mules to purchase MetroPCS Handsets in bulk for the benefit of Defendants. Defendants' active solicitation included contacting these runners and mules and requesting the purchase of specific MetroPCS Handset models. Runners, mules, and purchasers entered into valid and existing contracts with MetroPCS. Defendants had knowledge of these contracts and intended to, and in fact did, induce purchasers to breach those contracts with Plaintiff and turn over brand new MetroPCS Handsets to Defendants in large quantities. Defendants' misconduct proximately caused the breaches of these contracts, and as such, Plaintiff is damaged. Therefore, MetroPCS is entitled to default judgment against Defendants on its claim for conspiracy to induce breach of contract.

### III. MetroPCS Is Entitled to Monetary Damages, Attorneys' Fees and Costs, and Injunctive Relief

#### A. MetroPCS Is Entitled to Monetary Damages

Under the Lanham Act, appropriate damages include "(1) defendant's profits;

(2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The Court finds, based on the declaration of John Neil, that for each new Handset that MetroPCS sells, its investment and expected net revenue from the Handset averages $679.00. Although Defendants have attempted to thwart MetroPCS's ability to fully quantify its damages by refusing to participate in this lawsuit, based on the available information submitted by MetroPCS and supported by John Neil's declaration, MetroPCS's damages conservatively add up to at least $154,812.00, which is $679.00 times the 228 MetroPCS Handsets trafficked by Defendants.

 The Court may, "according to the circumstances of the case," increase an award under the Lanham Act by up to three times the amount of actual damages. 15 U.S.C. § 1117(a). Other courts considering similar issues in cases filed by MetroPCS and other wireless carriers have held that the trafficking activity engaged in by Defendants under the Lanham Act is willful, warranting treble damages. *See, e.g., Sprint Comm. Co. L.P. et al. v. Chong*, No. 13 Civ. 3846, 2014 WL 6611484 at *5 (S.D.N.Y. Nov. 21, 2014) ("[t]he submitted evidence and Chong's admissions upon default judgment show that Sprint is entitled to treble damages because Chong intentionally infringed Sprint's trademarks for his own profit. Further, Sprint's evidence indicates that, as a result of Chong's failure to participate in this litigation, the actual damages Sprint seeks are modest as compared to the likely extent of Chong's infringement, a factor that has been found to militate in favor of treble damages.") (internal citations omitted); *see also Sprint Solutions, Inc. v. Aldridge*, 50 F.Supp.3d 1024, 1027 (S.D. Ind. 2014); *Sprint Nextel Corp. v. Thuc Ngo*, No. 12–02764, 2014 WL 869486, *4 (N.D. Cal. Mar. 3, 2014). In

light of Defendants' willful violations of the Lanham Act, as well as their intentional absence from this case making it impossible for MetroPCS to quantify its true damages, trebling is appropriate here. Accordingly, MetroPCS is awarded damages of $464,436.00.

**B. MetroPCS Is Entitled to Its Attorneys' Fees and Costs**

 Under the Lanham Act, the Court has discretion to award reasonable attorneys' fees and costs in "exceptional cases." 15 U.S.C. § 1117(a). In the context of trademark infringement and unfair competition, the term "exceptional case," which is not defined by statute, is generally understood to include one involving proven fraud, bad faith or willful or deliberate infringement. *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1218 (9th Cir. 2003); *Days Inns Worldwide, Inc. v. Lincoln Park Hotels, Inc.*, 500 F.Supp.2d 770, 784 (N.D. Ill. 2007) (granting plaintiff over $150,000 in attorneys' fee where defendants "willfully violated the Lanham Act."); *Microsoft Corp. v. V3 Sols., Inc.*, No. 01 C 4693, 2003 WL 22038593, at *15 (N.D. Ill. Aug. 28, 2003) (finding willfulness based on defendants' "reckless disregard" for and "willful blindness" to plaintiffs trademark rights). In addition, a case may be deemed "exceptional" and merit an award of attorneys' fees under the Lanham Act when the Defendants disregard legal proceedings. *Lien v. Compusoft of Kalamazoo, Inc.*, 1991 WL 641575, *5 (W.D. Mich. 1991) (finding defendant's lack of cooperation and disrespect for the judicial process constituted exceptional circumstances warranting an award of attorneys' fees).

 Defendants' entire business model is predicated on the unauthorized and willful exploitation of MetroPCS and its Marks. Defendants' misappropriation of

the MetroPCS Marks gives them a special advantage in competition against MetroPCS. Defendants' business success is dependent upon MetroPCS's hard-earned reputation, all of which constitutes "deliberate and willful" behavior sufficient to merit an award of attorneys' fees. Defendants, through their default, have also admitted, that their fraudulent conduct in using the MetroPCS Marks was undertaken "willfully and deliberately."

The Court finds an award of attorneys' fees and costs is appropriate in this case. MetroPCS incurred reasonable attorneys' fees and costs in the amount of $47,394.34 in the prosecution of this case to date. Additionally, MetroPCS expended $5,432.22 investigating Defendants, which costs are also recoverable damages. *See Chong*, 2014 WL 6611484 at *9 (awarding reasonable investigation fees of over $13,000 against defaulting defendant). As such, an award of $52,826.56 in fees and costs is appropriate.

### C. MetroPCS Is Entitled to Injunctive Relief

Under a number of its claims, including its Lanham Act and CFAA claims, MetroPCS is entitled to injunctive relief. To demonstrate entitlement to permanent injunctive relief, the movant must generally establish: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F.Supp.2d 999, 1005 (N.D. Ill. 2008) (quoting *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007)); *see also*

*MetroPCS, a brand of T–Mobile USA, Inc. v. Raymond*, 1:15–CV–01062, —— F.Supp.3d ——, 2016 WL 1553728 (W.D. Tex. April 4, 2016) (granting default judgment and awarding damages in excess of $1.2 million and a permanent injunction against handset trafficking defendant).

"[I]t is well-established in the Seventh Circuit that irreparable harm and inadequate remedy at law are presumed in trademark and trade dress infringement cases." *7–Eleven, Inc. v. Spear*, No. 10–CV–6697, 2011 WL 830069, at *6 (N.D. Ill. Mar. 3, 2011), (quoting *Dunkin' Donuts Franchised Restaurants LLC v. Elkhatib*, 2009 WL 2192753, at *4 (N.D. Ill. July 17, 2009)); *see also Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) ("Irreparable harm is generally presumed in cases of trademark infringement and dilution."), citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 15–16 (7th Cir. 1992) (recognizing the "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss"). Having found in favor of MetroPCS on its trademark claims, irreparable harm is presumed here, and weighs in favor of granting a permanent injunction.

No adequate remedy at law exists because absent permanent injunctive relief, MetroPCS would be forced to repeatedly file suit any time Defendants, who have shown complete disregard for their legal obligations and the jurisdiction of this Court, infringe Plaintiff's trademark rights in the future. *See Kinsey*, 76 F.Supp.3d at 714 ("Without a permanent injunction, the defendants will likely continue their infringing conduct;" granting permanent injunction). Moreover, "damages occasioned by trademark infringement are by their very nature ... not susceptible of adequate measurement for remedy at law." *Trans Union LLC v. Credit Research,*

*Inc.*, 142 F.Supp.2d 1029, 1046 (N.D. Ill. 2001) (quoting *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982)). This Court finds MetroPCS's lack of control over Defendants' unauthorized use of its Marks weighs in favor of granting a permanent injunction.

The balance of hardships weighs strongly in MetroPCS's favor as MetroPCS is threatened with significant irreparable injury if a permanent injunction is not issued. Defendants' actions have resulted in shortages of available MetroPCS Handsets, thereby substantially harming MetroPCS and its relationship with retailer, dealers, and consumers because MetroPCS is not able to supply retailers and dealers with sufficient Handsets to satisfy the demand from legitimate consumers. Further, to the extent any of the Handsets end up in the hands of a potential MetroPCS customer, the Handsets are no longer in their original condition and often will not function because they are affiliated with fraud, theft or other loss. As a result, MetroPCS has lost, and continues to lose, potential consumers to wireless competitors. Also, as each MetroPCS Handset is unlocked and/or shipped overseas, Plaintiff loses its ability to recover its investment in that Handset. MetroPCS is thus left without any source of income on that device or the ability to recoup its investment in its Marks. On the other hand, Defendants have no legitimate interest in illicitly trafficking in MetroPCS Handsets acquired through overt acts of fraud or theft. *See Coach, Inc. v. 3D Designers Inspirations*, 70 F.Supp.3d 942, 950 (C.D. Ill. 2014) ("While a permanent injunction may harm [the infringing party's] profits … it never had a legal right to profit from such counterfeiting;" finding the balance of hardships weighed in favor of granting permanent injunction). Additionally, the monetary benefits that Defendants receive from their actions are not benefits to be protected from injury. *See Ty, Inc. v. GMA Accessories, Inc.*, 959 F.Supp. 936, 945 (N.D. Ill. 1997) ("Loss of profits from infringing products warrant little consideration in the balancing of harms analysis") (citation omitted). Defendants should not consider it a burden to follow the law, and any purported harm to Defendants that could result from issuance of injunctive relief should not preclude an injunction. *See Miyano Mach., USA, Inc. v. MiyanoHitec Mach, Inc.*, 576 F.Supp.2d 868, 888 (N.D. Ill. 2008) ("In assessing any irreparable harm [the infringing party] may suffer, this Court 'excludes any burden it voluntarily assumed by proceeding in the face of a known risk.' ") (citation omitted).

Finally, the public will benefit from this injunction because the public interest is advanced by enforcing faithful compliance with the laws of the United States and the State of Illinois. A permanent injunction in this case is appropriate because the public interest lies in favor of upholding property interests in trademarks and preventing customer confusion. *Miyano Mach. USA Inc.*, 576 F.Supp.2d 868 at 889 ("the public interest is generally served by the enforcement of trademark laws as such laws prevent confusion among and deception of consumers;" granting injunction) (citation omitted); *Coach, Inc.*, 70 F.Supp.3d at 950 (finding a permanent injunction will "not harm the public interest, but benefit the consuming public by eliminating deception as to the source and quality of products they buy from [the infringing party] and other potential [infringers] deterred by this order;" granting permanent injunction); *Lettuce Entertain You Enterprises, Inc. v. Leila Sophia AR, LLC*, 703 F.Supp.2d 777, 791 (N.D. Ill. 2010) ("Enforcement of trademark law serves the public interest by reducing consumer con-

fusion;" granting injunction) (citation omitted). There is no public interest in the improper and fraudulent acquisition and resale of MetroPCS Handsets, to the detriment of MetroPCS' dealers, retailers and consumers. To the contrary, the public has a strong interest in obtaining legitimate, fully-functioning MetroPCS Handsets for their telecommunications needs, as opposed to the hacked, un-warrantied, and illicit Handsets being trafficked by Defendants. As such, permanent injunction against Defendants is appropriate.

Based on the pleadings, motions and position advocated by the Plaintiff, and having reviewed the Complaint and file and being otherwise duly and fully advised in the premises, it is hereby:

**ORDERED, ADJUDGED** and **DE-CREED** that:

1. Final judgment is hereby entered against Defendants Mark Devor a/k/a Marcus W. Devor and Sheldon Chase a/k/a Chase Sheldon a/k/a Blu Chase and in favor of the Plaintiff, on all of the claims set forth in Plaintiff's Complaint in the principal amount of $517,262.56 (U.S.), which shall bear interest at the legal rate, for which let execution issue forthwith.

2. For T-Mobile USA, Inc. and all of its subsidiaries or brands, now or in the future, including MetroPCS, Defendants and all of their past and present agents, officers, directors, successors, assigns, parents, subsidiaries, affiliates, related companies, predecessors-in-interest, companies, agents, employees, heirs, personal representatives, beneficiaries, relatives, and all other persons or entities acting or purporting to act for them or on their behalf, including, but not limited to, any corporation, partnership, proprietorship or entity of any type that is in any way affiliated or associated with Defendants or Defendants' representatives, agents, assigns, parent entities, employees, independent contrac-

tors, associates, servants, affiliated entities, and any and all persons and entities in active concert and participation with Defendants who receive notice of this Order, shall be and hereby are PERMA-NENTLY ENJOINED from:

a. acquiring, purchasing, selling, unlocking, flashing, reflashing, altering, advertising, soliciting and/or shipping, directly or indirectly, any new MetroPCS or T-Mobile Handsets;

b. supplying MetroPCS or T-Mobile Handsets to or facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in the purchase or sale of MetroPCS or T-Mobile Handsets or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in MetroPCS or T-Mobile Handsets;

c. acquiring, advertising or reselling MetroPCS or T-Mobile services;

d. engaging in any of the conduct described in the Complaint as the "Handset Theft and Trafficking Scheme;"

e. accessing MetroPCS's or T-Mobile's computer networks either directly or through a MetroPCS or T-Mobile representative or customer or a third-party;

f. supplying MetroPCS or T-Mobile Handsets to or facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in any of the acts prohibited under this Permanent Injunction, including, without limitation, the buying and/or selling of MetroPCS or T-Mobile Handsets;

g. knowingly using the MetroPCS Marks or any other trademark, service mark, trade name and/or trade dress owned or used by MetroPCS

now or in the future, or that is likely to cause confusion with MetroPCS's Marks, without MetroPCS's prior written authorization;

h. holding themselves out as being associated with, employed by or on behalf of, or acting as agents, representatives or authorized partners of MetroPCS; and

i. advertising any products or services that have any purported connection to MetroPCS or any of MetroPCS's affiliates.

3. The acquisition, sale or shipment of any new MetroPCS or T-Mobile Handsets without MetroPCS's prior written consent within and/or outside of the continental United States is and shall be deemed a presumptive violation of this permanent injunction.

4. The address of Plaintiff is 12920 S.E. 38th Street, Bellevue, Washington 98006.

5. The last known address of Defendant Chase is 560 5th St. NW, Valley City, ND 58072.

6. The last known address of Defendant Devor is 3836 Stockbridge Ave., Los Angeles, CA 90032.

7. The Court retains jurisdiction over this matter and the parties to this action to enter an award of damages against Defendants, and to enforce any violation of the terms of this Permanent Injunction by a finding of contempt and an order for payment of compensatory damages to Plaintiff in an amount of $5,000 for each new MetroPCS or T-Mobile Handset that Defendants are found to have acquired, purchased, sold and/or unlocked in violation of this Injunction. The Court finds that these amounts are compensatory and will serve to compensate MetroPCS for its losses in the event Defendants violate the terms of this Order.

8. The Court hereby finds, pursuant to Fed. R. Civ. P. 54(b), that there is no just reason for delay and orders that Judgment shall be entered against Defendants as set forth herein.

9. The Court hereby finds that the acts of Defendants render them indebted to MetroPCS for money and property, including without limitation, illegally acquired new Handsets and proceeds from Defendants' resale of those Handsets, which Defendants obtained by false pretenses, by false representation, and/or by actual fraud, and therefore this judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

10. The Court hereby finds that the acts of Defendants constitute willful and malicious injury by Defendants to MetroPCS and/or the property of MetroPCS, including MetroPCS Handsets, MetroPCS's federally-registered trademarks, and MetroPCS's image and reputation, as a result of Defendants' admitted and continuing participation in the Scheme, and therefore this judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

DONE AND ORDERED this 14 day of October, 2016. nunc pro tunc October 7, 2016